UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────────────

MICHAELJON LORD,

                Plaintiff,

v.                                                            CASE # 18-cv-01213

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

───────────────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | ELIZABETH ANN HAUNGS, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | FRANCIS D. TANKARD, ESQ.<br>SIXTINA FERNANDEZ, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

     The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is GRANTED, Defendant's motion is DENIED, the decision of the Commissioner be

REVERSED, and this matter be REMANDED for further administrative proceedings consistent with this order.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on July 26, 1984, and completed high school. (Tr. 176). Generally, plaintiff's alleged disability consists of learning disability, knee pains, attention deficit hyperactivity disorder (ADHD), and migraines. (Tr. 181). His alleged onset date is October 1, 2006. (Tr. 177).

   B.   **Procedural History**

On July 15, 2014, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 10, 145-151). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (the ALJ). On April 24, 2017, plaintiff appeared before the ALJ, William M. Weir. (Tr. 34-72). On September 19, 2017, ALJ Weir issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-25). On September 13, 2018, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Thereafter, plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: depressive disorder and attention deficit hyperactivity disorder. (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive 1-2 steps tasks; no processing of multiple simultaneous goals or objectives; no need to independently set quality, quantity, or method production standards; no arithmetic above four operations; incidental public contact; and occasional contact with co-workers and supervisors.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 26, 1984, and was 22 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-19).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ did not properly evaluate his cognitive impairment. Second, the ALJ ignored limitations assessed by plaintiff's vocational rehabilitation counselor. Lastly, the ALJ

failed to reconcile limitations favorable to plaintiff's claim in the opinion from therapist Michael Russo. (Dkt. No. 10 at 1 [Pl.'s Mem. of Law]).

**B.     Defendant's Arguments**

In response, defendant makes two arguments. First, defendant argues the ALJ fully addressed plaintiff's mental limitations. (Dkt. No. 16 at 15 [Def.'s Mem. of Law]). Second, the ALJ reasonably weighed the opinion evidence. (Dkt. No. 16 at 21).

**III.    RELEVANT LEGAL STANDARD**

**A.     Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

Plaintiff argues the ALJ failed to properly evaluate the evidence of plaintiff's learning disability and diminished cognitive functioning across his determination. (Dkt. No. 10 at 11-17). At the time of application, plaintiff alleged learning disability as one of his impairments. (Tr. 181). The school records in the file indicate plaintiff was administered the Wechsler Abbreviated Scale of Intelligence (WASI) in August 2001 as part of his special education triannual review. He obtained a Verbal IQ of 77, Performance IQ of 67, and Full IQ of 70. (Tr. 171). The report stated that the full scale IQ of 70 "suggests that he is currently functioning in the low range of mental ability. It is indicative of global intellectual capacity that is better than about two percent of students his age." (Tr. 171).

### A. Step Two Standard

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found plaintiff's learning disability was not a severe impairment. (Tr. 13). The ALJ states the record contains a "remote IQ score of 70" but that after high school there was "no indication that this was ever an actively treated condition" or severe limitations suggested by any source. (*Id*.). Defendant's argument that the ALJ satisfied his duty by "explicitly and accurately" setting out the legal standard for what constitutes a non-severe impairment is unpersuasive. (Dkt. No. 16 at 16). Use of legal boilerplate language is not meaningful analysis as more fully discussed below.

The ALJ apparently dismisses the IQ score because it is "remote", but Courts have held it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will

experience a fairly constant IQ throughout their life. *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012). Plaintiff was 17 years old at the time of the WASI testing. Program Operations Manual System (POMS) directs that IQ scores generally tend to stabilize by age 16. *See* POMS DI 28010.150(A)(1). Therefore, the timing of the cognitive test is not a valid reason to give it less weight.

The ALJ's statement that there is no active treatment for the intellectual disability, therefore making it not severe, is insufficient to warrant a conclusion that the impairment is not severe. Intellectual disorders are different from other mental disorders in that there is no treatment to cure or reduce symptoms. In this case however there was additional involvement by vocational rehabilitation services. Plaintiff was referred by a state agency vocational rehabilitation counselor to Learning Disabilities Association of Western New York, a division of the State of New York Educational Department. (Tr. 484). He was found eligible for vocational rehabilitation services from Adult Career and Continuing Education Services – Vocational Rehabilitation (ACCES-VR) based on his disability, which was deemed to affect this ability to work. (Tr. 506). Part of the provided services was development of an individualized plan for employment (IPE) which established a goal of supported employment in production occupations. (Tr. 510). The fact that plaintiff was referred to this provider because he could not find work with a previous vocational rehabilitation counselor due to his criminal background is not relevant. To be found eligible for the ACCES-VR services and an IPE there was criteria pertaining to a learning disability that must have been met. The Supported Employment Referral Form from the State of New York specifies that plaintiff had impairments separate and apart from his convictions. (Tr. 575). How plaintiff came to the agency is not as probative as why he qualified for services when looking at his cognitive impairments. (Tr. 498). He had identified limitations in receptive language, expressive

communication, social interaction, initiative, judgment, attention, and environmental conditions. (Tr. 576). Notably, the ALJ lumped all records about his vocational rehabilitation from the disability center into three sentences with only a general citation to one exhibit, when there was evidence in other exhibits as well. (Tr. 18).

Additional substantial evidence in the record also does not support the ALJ's finding of non-severity. Most notably, after examining the plaintiff, consultative examiner Dr. Billings stated plaintiff was an "excellent candidate for an intellectual evaluation to more fully characterize his relative cognitive strengths and weaknesses." (Tr. 323). He stated intellectual functioning was very grossly estimated as being in the borderline range with limited general fund of information. (Tr. 321). Dr. Billings also diagnosed rule out intellectual disability, mild. (Tr. 323). The ALJ gave this opinion "good weight." (Tr. 17). No additional testing was ordered by the ALJ despite Dr. Billings recommendation and contradictory information about cognitive functioning. *Dufresne v. Astrue*, 52013 WL 1296376 (N.D.N.Y. Mar. 8, 2013) *report and recommendation adopted,* 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013)(An ALJ should order a consultative intelligence test in order to clarify a claimant's intelligence level where there is conflicting evidence as to his abilities).

Similarly, State Agency review psychiatrist H. Tzetzo also opined plaintiff's intellectual disability was a severe impairment (Tr. 79). The ALJ erred by never addressing this opinion which failure is not immaterial as argued by defendant. 20 C.F.R. §404.1527(c). Overall, the ALJ's omission of a learning disorder or intellectual disability is not harmless because the ALJ did not address either disorder during subsequent steps.

## B. Step Three Analysis

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. §§ 404.1520(d); 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's RFC and proceeds to the next steps of the analysis. 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

An ALJ must explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Importantly, it is the ALJ's responsibility—and not the job of the Commissioner's attorney—to "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). The Court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Id*. "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted); *see also Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (affirming step three decision even though ALJ did not set forth a specific rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence").

In his decision, the ALJ superficially considers Listing 12.05 (Intellectual Disorder) by offering a recitation of the regulation's text. (Tr. 14-15). The first prong of Listing 12.05(B) requires a full scale IQ score of 70 or below on an individually administered standardized test of general intelligence. As stated previously, plaintiff had the requisite IQ scores to be considered under the listing. However, beyond the one sentence in the Step Two analysis, there is no additional discussion regarding the IQ scores, special education, or vocational services.

The ALJ was obligated to explain why he concluded plaintiff did not meet Listing 12.05 based on his full scale IQ of 70. *See Rockwood*, 614 F. Supp. 2d at 273. The ALJ's decision lacks "an accurate and logical bridge from the evidence to [his] conclusion" and therefore the Court cannot conduct a meaningful review. *Hamedallah*, 876 F. Supp. 2d at 142. Despite defendant's arguments, the remainder of the ALJ's decision does not permit the court to "glean the rationale" behind his conclusion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When ... the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Defendant argues the ALJ assessed plaintiff's adaptive functioning under Listing 12.05(B) but this contention amounts to a post hoc rationalization. *McFarland-Deida v. Berryhill*, No. 17-CV-6534-FPG, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 2, 2018) *citing Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") In addition to the five-step analysis outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. These regulations require application of a

"special technique" at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n. 4 (7th Cir.2007), and at each level of administrative review. 20 C.F.R. § 404.1520a(a). The second prong of Listing 12.05(B) addresses deficits in adaptive functioning and parallel the special technique criteria. To satisfy the listing, deficits must manifest in an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; or (d) adapt or manage oneself. In his decision, after writing the text of the Listing requirements for 12.04 and 12.05, ALJ Weir starts a new paragraph stating that the mental impairments do no meet or medically equal the criteria of listings 12.04, with no mention of 12.05. For each broad area the ALJ only states there are moderate limitations. There is no further discussion, evidence, or rationale. (Tr. 15). First, it is unclear if the special technique was to apply to the second prong of 12.05(B). Second, it is unclear if any cognitive limitations were considered in evaluating the degree of functional limitation. Because cognitive limitations (such as learning or intellectual disabilities) fall under the rubric of mental impairments, the ALJ is required to contemplate them in the special technique. *See Booker v. Astrue*, No. 1:07-CV-646 GLS, 2011 WL 3735808, at *3 (N.D.N.Y. Aug. 24, 2011). If the ALJ did not include plaintiff's cognitive limitations and psychiatric impairments in this analysis it is an error that warrants remand. *See Faison v. Berryhill*, No. 6:16-CV-06055(MAT), 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017)("Failure to apply the special technique with regard to a cognitive impairment such as borderline intellectual functioning has been found to be reversible error"). However, this Court cannot meaningfully review what the ALJ evaluated in the special technique because there is no discussion or analysis provided. *See Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 299 (W.D.N.Y. 2016) ("While the ALJ's functional limitation assessment for Plaintiff's depression

could, in theory, draw from the same sources in the record and be substantially similar to that which the ALJ would have assessed for Plaintiff's alleged-borderline intellectual functioning, it would be overly speculative on the part of the Court to say as much definitively").

ACCORDINGLY, it is

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 23, 2020  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge